# In the United States Court of Federal Claims

**OFFICE OF SPECIAL MASTERS**
No. 25-0192V
UNPUBLISHED

|  |
| --- |
| LEANN DIERCKS,<br><br>                    Petitioner,<br><br>v.<br><br>SECRETARY OF HEALTH AND<br>HUMAN SERVICES,<br><br>                    Respondent. |

Chief Special Master Corcoran

Filed: March 13, 2026

*Daniel Alholm, Alhom Law PC, Chicago, IL, for Petitioner.*

*Felicia Langel, U.S. Department of Justice, Washington, DC, for Respondent.*

### FINDINGS OF FACT[1]

On February 3, 2025, LeAnn Diercks filed a petition for compensation under the National Vaccine Injury Compensation Program, 42 U.S.C. §300aa-10, *et seq.*[2] (the "Vaccine Act"). Petitioner alleges that she suffered a shoulder injury related to vaccine administration ("SIRVA") from an influenza ("flu") vaccine she received on December 28, 2022. Petition at 1. The case was assigned to the Special Processing Unit of the Office of Special Masters.

---

[1] Because this unpublished Fact Ruling contains a reasoned explanation for the action in this case, I am required to post it on the United States Court of Federal Claims' website in accordance with the E-Government Act of 2002. 44 U.S.C. § 3501 note (2012) (Federal Management and Promotion of Electronic Government Services). **This means the Fact Ruling will be available to anyone with access to the internet.** In accordance with Vaccine Rule 18(b), petitioner has 14 days to identify and move to redact medical or other information, the disclosure of which would constitute an unwarranted invasion of privacy. If, upon review, I agree that the identified material fits within this definition, I will redact such material from public access.

[2] National Childhood Vaccine Injury Act of 1986, Pub. L. No. 99-660, 100 Stat. 3755. Hereinafter, for ease of citation, all section references to the Vaccine Act will be to the pertinent subparagraph of 42 U.S.C. § 300aa (2012).

For the reasons set forth below, I find that Petitioner's injury was limited to her vaccinated (left) shoulder.

## I.    Relevant Procedural History

On February 20, 2025, about one year after the case was initiated, Respondent filed a Rule 4(c) Report arguing that Petitioner cannot prove a SIRVA Table injury because Petitioner "cannot establish that her symptoms were limited to the shoulder in which the vaccine was administered." Respondent's Report at 5.

Because the Rule 4(c) report raises an isolated issue that likely resolves entitlement in this case, I issue this fact ruling to resolve this issue. No further briefing from the parties is required.  My ruling is set forth below.

## II.    Relevant Medical History

Ms. Diercks was 47 years old when she received a flu vaccine in her left deltoid on December 28, 2023, at Pick-n-Save Pharmacy located in Grafton, Wisconsin. Exhibit ("Ex.") 3 at 9; Ex. 4 at 1. She did not have a history of left shoulder pain. *See* Ex. 5 at 21, 33-188.

On January 3, 2024, six days post vaccination, Ms. Diercks went to her primary care provider's ("PCP") office for her regular iron replacement infusion. Ex. 6 at 1005-06. The supervising nurse performed an assessment, and Petitioner reported generalized fatigue. *Id*. There is no mention of shoulder pain at this visit.

On January 11, 2024, 14 days post-vaccination, Ms. Diercks returned to her PCP's and was seen by Christopher Eemisse, D.O. Ex. 5 at 27. Petitioner reported left shoulder pain that "started after her flu shot injection on December 28th…" *Id*. at 27-28. Ms. Diercks stated that she had "left shoulder pain, radiated down her elbow, under armpits … [which] started […] after receiving influenza vaccine on 12/28/2023. After vaccination, she has extremely painful pressure. Using Tylenol." *Id*. at 28. On exam, Petitioner had pain on palpation, when reaching behind her head, and near the end of the Neer's test on the left. *Id*. Dr. Eemisse assessed "acute pain of the left shoulder" stating that the vaccine "[c]ertainly could have irritated this area. Her exam does point to irritated cuff tendons." *Id*. at 29. He further stated that "I have a lower suspicion for joint involvement as passive range of motion[] did not reproduce her pain." *Id*. at 29. Dr. Eemisse referred Ms. Diercks to physical therapy ("PT"). *Id*.

2

On January 15, 2024, Ms. Diercks went to an initial PT evaluation. Ex. 6 at 988. She reported that she:

> started to experience left shoulder pain following receiving her influenza 12/28/23. She notes that her shoulder has continued to experience symptoms since this event, noting that her symptoms have stayed consistent, but have been variable day to day. She notes that her pain is primarily an intense dull ache. She notes that she initially had some mild neurological symptoms following this down to her hand, which resolved the following day.

*Id*. Ms. Diercks also reported "concern[] for a possible SIRVA injury following vaccination, noting that she feels that the needle placement was higher than injections she has received in the past." *Id*. On exam, Petitioner rated her pain at 4/10, had positive impingement signs, painful ROM, and reduced strength. Ms. Diercks was prescribed PT twice a week for 12 weeks, for a total of 24 visits. *Id*. at 989-90, 992.

On April 11, 2024, Ms. Diercks went to PCP Anna Kleyman, D.O., for a follow up on her left shoulder pain. Ex. 5 at 20. She reported that her "pain is burning, down to [her] 4th and 5th fingers." *Id*. Petitioner also reported some improvement from Tylenol and some improvement in her range of motion since starting PT. *Id*. A left shoulder x-ray was normal. *Id*. at 17, 22. Dr. Kleyman recommended continued PT and that Petitioner return if there was no improvement. At that time, an MRI would be considered. *Id*. at 23.

On June 17, 2024, almost six months post-vaccination, Ms. Diercks telephoned Dr. Kleyman and reported daily pain from "SIRVA," and that "[her] physical therapist suspects that it is nerve damage that is causing this and we continue to treat it as such." Ex. 5 at 7. However, Petitioner requested an MRI "to get the information needed to identify the specific injury." *Id*.

On July 1, 2024, Ms. Diercks underwent a left shoulder MRI which showed tearing of the intra-articular bicep tendon, a partial-thickness articular sided tearing of the subscapularis tendon, mild-to-moderate supraspinatus and infraspinatus tendinosis, and mild arthritis. Ex. 6 at 751-52. Dr. Kleyman referred Petitioner to orthopedics. *Id*. at 734.

On July 19, 2024, Petitioner saw orthopedist Nathan Kopydlowski, M.D., complaining of left shoulder pain that had been ongoing since December 28, 2023, when she received a flu vaccine. Ex. 6 at 709. Petitioner reported that the pain was "on the outside of the [left] shoulder and radiating down into the bicep and across the front of the chest." *Id*. She also reported that "[t]he pain is located throughout the shoulder but can radiate down the arm into her hand." *Id*. at 711. On exam, Petitioner had positive impingement signs, tenderness, joint crepitus, and normal active ROM. *Id*. at 712-13. Dr.

3

Kopydlowski diagnosed Petitioner with "left shoulder subacromial bursitis after vaccine" and administered an intra-articular cortisone injection. *Id*. at 713. Dr. Kopydlowski also recommended continued PT and rechecks as needed. *Id*.

Ms. Diercks attended 21 PT sessions through September 19, 2024, that were characterized by gradual symptom improvement and "feeling about 75% better" by June 3, 2024. Ex. 6 at 334, 842.

On September 24, 2024, nine months post-vaccination, Ms. Diercks followed up with Dr. Kopydlowski and reported that her pain in the past couple of weeks had drastically improved and that her range of motion and strength was nearly normal. Ex. 6 at 311. Dr. Kopydlowski recommended a recheck if her symptoms failed to continue to improve. *Id*. at 313.

### III.    Issues

The following issue is contested: whether Petitioner's pain and reduced range of motion are limited to the shoulder in which the intramuscular vaccine as administered as set forth in the Vaccine Injury Table and Qualifications and Aids to Interpretation ("QAI") for a Table SIRVA. 42 C.F.R. § 100.3(c)(10)((iv) (pain and reduced range of motion limited to the shoulder in which the intramuscular vaccine was administered).

### IV.    Authority

Pursuant to Vaccine Act Section 13(a)(1)(A), a petitioner must prove by a preponderance of the evidence the matters required in the petition by Vaccine Act Section 11(c)(1). A special master must consider, but is not bound by, any diagnosis, conclusion, judgment, test result, report, or summary concerning the nature, causation, and aggravation of petitioner's injury or illness that is contained in a medical record.  Section 13(b)(1). The Federal Circuit has said that

> Medical records, in general, warrant consideration as trustworthy evidence. The records contain information supplied to or by health professionals to facilitate diagnosis and treatment of medical conditions. With proper treatment hanging in the balance, accuracy has an extra premium. These records are also generally contemporaneous to the medical events.

*Cucuras v. Sec'y of Health & Human Servs*., 993 F.2d 1525, 1528 (Fed. Cir. 1993). Accordingly, where medical records are clear, consistent, and complete, they should be afforded substantial weight. *Lowrie v. Sec'y of Health & Human Servs*., No. 03-1585V, 2005 WL 6117475, at *20 (Fed. Cl. Spec. Mstr. Dec. 12, 2005).

The Federal Circuit recently stressed, however, that records enjoy no automatic presumption of accuracy, despite their "trustworthy" evidentiary character. *Kirby v. Sec'y of Health & Human Servs.*, 997 F.3d 1378, 1384 (Fed. Cir. 2021). Indeed, "medical records may be incomplete or inaccurate." *Camery v. Sec'y of Health & Human Servs.*, 42 Fed. Cl. 381, 391 (1998); *see also Lowrie*, 2005 WL 6117475 at *19 ("written records which are, themselves, inconsistent, should be accorded less deference than those which are internally consistent").

The Court has outlined four possible explanations for inconsistencies between contemporaneously created medical records and later testimony: (1) a person's failure to recount to the medical professional everything that happened during the relevant time period; (2) the medical professional's failure to document everything reported to her or him; (3) a person's faulty recollection of the events when presenting testimony; or (4) a person's purposeful recounting of symptoms that did not exist. *La Londe v. Sec'y of Health & Human Servs.*, 110 Fed. Cl. 184, 203-04 (2013), *aff'd*, 746 F.3d 1335 (Fed. Cir. 2014).

Thus, medical records may be outweighed by testimony that is given later in time that is "consistent, clear, cogent, and compelling." *Camery*, 42 Fed. Cl. at 391 (citing *Blutstein v. Sec'y of Health & Human Servs.*, No. 90-2808, 1998 WL 408611, at *5 (Fed. Cl. Spec. Mstr. June 30, 1998)). The credibility of the individual offering such testimony must also be determined. *Andreu v. Sec'y of Health & Human Servs.*, 569 F.3d 1367, 1379 (Fed. Cir. 2009); *Bradley v. Sec'y of Health & Human Servs.*, 991 F.2d 1570, 1575 (Fed. Cir. 1993).

The special master is obligated to fully consider and compare not only the medical records, testimony, but also all other "relevant and reliable evidence contained in the record." *La Londe*, 110 Fed. Cl. at 204 (citing Section 12(d)(3); Vaccine Rule 8); *see also Burns v. Sec'y of Health & Human Servs.*, 3 F.3d 415, 417 (Fed. Cir. 1993) (holding that it is within the special master's discretion to determine whether to afford greater weight to medical records or to other evidence, such as oral testimony surrounding the events in question that was given at a later date, provided that such determination is rational). And although later oral testimony that conflicts with medical records is less reliable as a general matter, it is appropriate for a special master to credit a petitioner's lay testimony where is does not conflict with the contemporaneous records. *Kirby*, 997 F.3d at 1382-84.

## V.    Analysis

To establish a Table SIRVA, a petitioner's pain and reduced ROM must be limited to the shoulder in which the vaccination alleged as causal was administered. 42 C.F.R. § 100.3(c)(10)(iii). Respondent argues that since her initial presentation for pain on January

11, 2024, Petitioner "consistently reported pain outside of her left shoulder." Respondent's Report at 5. Respondent cites to several citations in the medical records where Petitioner complains of pain burning down to her fingers, down her bicep, across the front of the chest, and a notation from a physical therapist that there is the possibility of nerve damage. *Id*.

While Respondent's objection finds some support in the evidentiary record, the objection must be taken in context of the full factual picture. First, there seems to be no dispute that Petitioner's reduced range of motion is limited to her left shoulder. The primary question is whether her pain is limited to her left shoulder.

It is also undisputed that Ms. Diercks had no history of left shoulder symptoms, including pain, prior to vaccination. Just 14 days after vaccination, Petitioner complained to her PCP of left shoulder symptoms that typify the usual SIRVA injury – pain on palpation, reduced range of motion, and she had positive impingement tests. Ex. 5 at 27-28.  And while Ms. Diercks did complain that her shoulder pain radiated down her elbow, her PCP diagnosed Petitioner with *acute pain of the left shoulder* and agreed that vaccination "certainly could have irritated this area." Ex. 5 at 29.

When Petitioner was evaluated at her initial PT session, she again exhibited the usual symptoms of a SIRVA injury as documented by the physical therapist – Petitioner had positive impingement signs, painful ROM, and reduced strength. Ex. 6 at 989-992. And while her physical therapist at one point suggested that Petitioner may have "nerve damage," the therapist made this assessment prior to Petitioner undergoing an MRI.

The MRI again confirmed typical SIRVA type symptoms such as tendinosis, in addition to showing some tearing and arthritis. Ex. 6 at 751-52. After receiving a steroid injection, Ms. Dierck's pain seemed to have significantly improved, again lending support to the claim that her injury is a SIRVA injury rather than a nerve injury that would not have responded as well to a steroid injection. No additional nerve conduction studies or tests were ever ordered. All of Petitioner's treatment was to treat her left shoulder pain and improve her range of motion. *See e.g.*, Ex. 6 at 709 (steroid injection to left shoulder); Ex. 6 at 751-52 (MRI to left shoulder); Ex. 6 at 989-90, 992 (PT to treat left shoulder pain). To the extent that complaints of pain related to areas outside the deltoid region, they bear on damages – but the totality of the evidence still establishes pain primarily in the affected shoulder. I thus find that Petitioner's pain and reduced ROM is limited to the shoulder in which the vaccination was administered.

Given my findings of fact, Respondent should evaluate and provide his current position regarding the merits of Petitioner's case.

6

**VI.    Scheduling Order**

**Accordingly, the following is ORDERED:**

**(1) By <u>Tuesday, April 17, 2026,</u> Petitioner shall file all updated medical records.**

**(2) Respondent shall file, by no later than <u>Monday, April 17, 2026,</u> an amended Rule 4(c) Report reflecting Respondent's position in light of the above fact-finding.**

IT IS SO ORDERED.

<u>s/Brian H. Corcoran</u>
Brian H. Corcoran
Chief Special Master